# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 17, 2010

## STATE OF TENNESSEE v. ELIZABETH JOHNSON

**Direct Appeal from the Circuit Court for Van Buren County**
**No. 2172M    Larry B. Stanley, Jr., Judge**

_____

**No. M2010-00018-CCA-R3-CD - Filed September 17, 2010**

_____

A Van Buren County jury convicted the Defendant, Elizabeth Johnson, of simple assault, a Class A misdemeanor. The trial court sentenced the Defendant to eleven months and twenty-nine days, 150 days of which to serve in the county jail. The Defendant appeals, contending: (1) the evidence was insufficient to support her conviction; and (2) the trial court erred when it ordered her to serve 150 days of her sentence in confinement. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

L. Scott Grissom, McMinnville, Tennessee, for the Appellant, Elizabeth Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Sophia S. Lee, Assistant Attorney General; Lisa Zavagiannis, District Attorney General; Randall Gilliam, Assistant District Attorney General, for the State of Tennessee.

## OPINION

## I.  Facts
### A.  Trial

A Van Buren County grand jury indicted the Defendant for two counts of simple assault. A jury trial followed, but the appellate record does not include a transcript of this

trial. The Defendant filed a Statement of the Evidence presented at trial, but the filing did not comply with the timing and service requirements set out in Tennessee Rule of Appellate Procedure 24(c). We note several procedural deficiencies in the Defendant's compliance with Tennessee Rule of Appellate Procedure 24, as set out in footnote three of the State's brief. Because the State does not contest the accuracy of the Statement of the Evidence, however, we will, in the interest of justice, proceed with our review and rely upon the Statement of Evidence in doing so. *See State v. Marion Lee Chapman*, No. W1999-00410-CCA-R3-CD, 2001 WL 1246400, *2 (Tenn. Crim. App., at Jackson, Oct. 16, 2001), *no Tenn. R. App. P. 11 application filed*. The Statement of the Evidence sets forth the following account of the evidence presented at trial:

The State's first witness was Brian Gay, the son of []Tracy Price [("the victim")]. Mr. Gay testified that he was in the eighth (8th) grade at White County Middle School and had not known [the Defendant] very long. He stated that he had been once before to [the Defendant's] home where the incident happened when Bob ([his] former stepfather) had taken the boys (former stepbrothers) to [the Defendant's].

On the day of the incident, July 20, 2008, [the victim] picked [Mr. Gay] up and asked him to give her directions to [the Defendant's] home in Spencer so they could pick up his younger sister, Rachel. Rachel had been at her grandmother's during the custodial time of her father Bob who is . . . the ex-husband of [both the Defendant and the victim]. [The Defendant's] children (several boys) were also at the grandmother's home. After [the Defendant] got off work, she went to the grandmother's to pick up her boys as it was time for her custodial period with the children. For some reason Rachel went with her stepbrothers from her grandmothers in Sparta to [the Defendant's home] in Spencer.

Mr. Gay testified that his mother was upset that Rachel went with [the Defendant] to Spencer instead of staying at grandmother's in Sparta. During the trip to Spencer, [the victim called Bob's sister, Crystal Farris]. Mr Gay testified that when he and his mother arrived at [the Defendant's] that Rachel was outside playing and that [the Defendant] was on the porch. Mr Gay stayed in the car with the windows up while his mother got out to get Rachel. At some point [the Defendant] came down from the porch into the driveway and she and his mother were arguing. Mr. Gay testified that [the Defendant] turned and hit his mother once in the face. He got out of the car at this time but there was no further violence and he, his mother and sister soon left.

2

[The victim] testified that she and Bob have one child together, Rachel, and that he has custody on Tuesday, Saturday and Sunday. She testified that Rachel had never been to [the Defendant's home] with her permission and that she did not give her permission on July 20, 2008, the day in question. [The victim] testified that she had known [the Defendant] since high school and was stepmother to [the Defendant's] children when she was married to Bob. She believed that this relationship caused tension between her and [the Defendant].

[The victim] testified that she was upset that Bob had let Rachel go home with [the Defendant] for various reasons, including that it was the middle of the week and she was low on money. She said she was agitated and did talk to Crystal Farris by phone.

[The victim] testified that when she arrived at [the Defendant's] she was told by [the Defendant] that Rachel was playing in the sandbox and that Bob gave her permission to take Rachel. [The Defendant] then called for Rachel who comes around the house. [The victim] testified that [the Defendant] had been screaming and cussing at her earlier and was still screaming and cussing. [The victim[ testified she was standing in the driveway by her car and that [the Defendant] came up to her and hit her in the face, causing the frames for her glasses to be chipped and a cut above her eye. She then went to her brother's in Doyle and came back to Spencer on August 1, 2008 to take out a warrant against [the Defendant].

Brandon Farris was the first witness for the defense and he stated he was thirteen (13) years old and his mother is [the Defendant]. Mr. Farris' father is Bob and he knew [the victim] and [Mr.] Gay as his father was once married to [the victim]. Mr. Farris testified that he and his brothers were at his grandmother's house in Sparta when his mother came to pick them up after lunch. He believed that they got to his mother's house around 3:30 or 4:00 and then [he], his brothers and cousins were playing outside in the rain. Mr. Farris stated they had been at his mother's for about thirty (30) minutes when [the victim] and [Mr. Gay] pulled into the driveway. He testified that [the victim] got out of the car yelling and that his mother who was on the porch told her to leave. [The victim] and his mother moved toward each other in the driveway yelling and cursing and that [the victim] swung her fist at his mother and that she ducked and then his mother swung and hit [the victim] one time.

Crystal Farris testified that she is Bob's sister and is the ex-sister-in-law of both [the Defendant] and [the victim]. Ms. Farris testified that when Rachel

3

went with [the Defendant] the kids were playing. She was later called by [the victim] who was upset because of Rachel leaving with [the Defendant].

The final defense witness was Jordan Farris, who is the son of Crystal Farris and the nephew of both [the Defendant and the victim]. Mr. Farris testified that when they got to [the Defendant's], he played tag and jumped on the trampoline. He stated that when [the victim] got out of her car she was yelling and cussing and that [the Defendant] was yelling and cussing also. He saw [the victim] swing at [the Defendant] but [the Defendant] ducked and then hit [the victim] one time.

At the conclusion of the trial, the jury found the Defendant guilty of one count of simple assault, a Class A misdemeanor, and acquitted her of the second count of simple assault.

## II. Sentencing

At the Defendant's sentencing hearing, the Defendant confirmed she had the following criminal record: a worthless check charge and failure to appear in December 1999; a driving on a suspended license in February and August 2000; vehicular assault, driving on a suspended license, and reckless endangerment with a weapon charges in September 2000; and a domestic assault charge in 2005. The Defendant also confirmed she had previously violated two probation sentences: once in August 2000 and again in 2005.

The Defendant testified at her sentencing hearing, acknowledging her lengthy criminal record but insisting she was defending her family and home when she struck the victim:

I was at my own home. Yes, I have a prior record but I've not been in trouble in a long time. I wasn't out here at a bar or anything like that looking for trouble. I was at my own home taking care of my kids and, you know, I was defending myself. She come up to my own home and whenever you can't take care of your home or your kids . . . .

At the conclusion of the sentencing hearing, the trial court sentenced the Defendant to eleven months and twenty-nine days, with 150 days to be served in the Van Buren County Jail. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal the Defendant attacks both the sufficiency of the evidence supporting her conviction and the portion of the trial court's order requiring her to spend 150 days of her

4

eleven-month, twenty-nine-day sentence in confinement.

## A. Sufficiency of the Evidence

The Defendant contends the evidence was not sufficient to prove that the Defendant struck the victim without provocation. She argues that, because none of the witnesses who presented the divergent accounts of the altercation were impeached, the jury was left to "essentially guess which side was accurately testifying . . . ." The State responds that, because all testifying witnesses agreed that the Defendant struck the victim, the evidence sufficiently supports the jury's finding that the Defendant committed simple assault against the victim.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant was convicted of simple assault under Tennessee Code Annotated § 39-13-101(a)(1), which defines assault as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another." The Defendant does not dispute that she intentionally struck the victim. Instead, she disputes whether, in light of testimony presented by the defense that the victim first attempted to strike the Defendant, the jury could have reasonably concluded that the Defendant's conduct was without provocation. Tennessee's self-defense statute, Tennessee Code Annotated section 39-11-611(a) (2006), provides as follows:

A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). It is within a jury's prerogative to reject a claim of self-defense. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

Following our review of the record on appeal, we are unable to ascertain whether a request was made for a self-defense instruction or whether the jury was actually instructed on self-defense. When the jury found the Defendant guilty of assault, it implicitly either discredited the defense witnesses' accounts of the altercation or determined that the Defendant's use of force was not justified as an act of self-defense. As the jury is the sole trier of fact, we will not disturb the jury's finding that the Defendant did not hit the victim in self-defense. *See Bland*, 958 S.W.2d at 659. We conclude the evidence was sufficient to support the Defendant's conviction for assault. She is not entitled to relief on this issue.

## B. Misdemeanor Sentencing

The Defendant contends the trial court erred when it ordered her to serve 150 days of her eleven-month, twenty-nine-day sentence in confinement. She argues that, given the "relatively minor" nature of her assault against the victim, 150 days of confinement is excessive, even in light of her criminal record. The State responds that the Defendant's criminal record as well as her two past failures to comply with sentences involving release into the community justify her 150-day jail sentence. We agree with the State.

We review misdemeanor sentencing de novo with a presumption of correctness. T.C.A. §§ 40-35-401(d), -402(d). "[T]he presumption of correctness . . . is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party bears the burden of overcoming this presumption of correctness and showing that the trial court erred. T.C.A. § 40-35-401(d) (2006) Sentencing Comm'n Cmts.

A trial court is required to conduct a hearing where the parties have "a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." T.C.A. § 40-35-302(a) (2006). When determining the sentence length, the court must "fix a specific number of months, days or hours," and it must also "fix a percentage of the sentence that the defendant shall serve." T.C.A. § 40-35-302(a), (b). While weighing the Defendant's eligibility for an alternative sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

7

T.C.A. § 40-35-103 (2006). After determining the length and manner of the Defendant's sentence, the trial court must also set a percentage defining when the defendant "shall be eligible for consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d); *State v. Troutmann*, 979 S.W.2d 271, 274 (Tenn. 1998). When determining the percentage of the sentence to be served before the defendant is eligible for programs, the trial court "shall consider," but does not have to state in the record, the enhancement and mitigating factors applicable to the case. T.C.A. § 40-35-302(d); *Troutmann*, 979 S.W.2d at 274. The trial courts have continuing jurisdiction and a great deal of flexibility when sentencing a defendant for a misdemeanor. *See* T.C.A. § 40-35-302(d), Sentencing Comm'n Cmts.; *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

The Defendant was convicted of simple assault, a Class A felony, punishable by no more than eleven months, twenty-nine days. The trial court's sentence of eleven months and twenty-nine days, therefore, is within the appropriate range for a Class A misdemeanor. *See* T.C.A. § 40-35-111(e)(1) (2009). Additionally, the trial court's splitting the Defendant's sentence between confinement and probation is permitted. T.C.A. § 40-35-104(c)(3) (2009). What remains to be determined then is whether the trial court relied on proper considerations in ordering the Defendant to serve 150 days in confinement.

In determining the portion of her sentence the Defendant would serve in confinement, the trial court first explained that the Defendant's criminal record dissuaded it from crediting the Defendant's claim of defense of self and home:

> [T]here is a right to defend yourself in this state when you are in fear of bodily harm, someone enters your home with the intent to hurt you or hurt your family and so forth. I believe in that. I think that's fair. As they say, a man or woman's home is their castle and you don't have a duty to retreat from it.
>
> On the other hand, the vast majority of people in this county and this state do not have the type of criminal record that you do. It should be obvious to you that if you are involved in any type of criminal activity that turns out to be assault, driving on revoked license, reckless endangerment or whatever, a court such as this one is going to see that and realize that . . . .

Noting that the Defendant's record included several incidents of violence toward other persons, the trial court expressed its concern that the Defendant had an anger management problem that jeopardized public safety:

> [T]here are at least one, two, three, at least five separate incidents where these

8

things have happened and one of the things that bothers me particularly is that a couple of them involved endangering other people. When you have a domestic assault conviction, a vehicular assault, endangerment with a weapon and things like that, it leads me to believe that you have an anger problem, that people have been injured or at least been placed in eminent possibility of bodily injury by you and that there is some problem there.

The trial court emphasized the great weight it placed on the Defendant's past failures to comply with measures less restrictive than confinement: "[T]wo violations of probation indicate that you're probably not a suitable candidate for it. I don't know what the problem is but on two occasions you were unable to follow all the rules of probation." Finally, the trial court explained that the Defendant's commendable maintenance of employment could not fully ameliorate the problem of her serious criminal record.


The trial court properly considered the principles for misdemeanor sentencing set out in the Sentencing Act when it sentenced the Defendant. In relying on the gravity of the Defendant's history of violent conduct, the trial court considered whether "confinement [was] necessary to protect society by restraining a defendant who has a long history of criminal conduct." *See* T.C.A. § 40-35-103(A). In relying on the Defendant's past failures to comply with terms of alternative release, the trial court considered whether "measures less restrictive than confinement ha[d] frequently or recently been applied unsuccessfully to the defendant." *See* T.C.A. § 40-35-103(C). We conclude that the trial court, because it thoroughly considered the relevant facts and sentencing principles, properly sentenced the Defendant to eleven months and twenty-nine days and ordered her to serve 150 days in the county jail. *See Boyd*, 925 S.W.2d at 244. She is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude the evidence was sufficient to support the Defendant's conviction, and the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgment.


_____
ROBERT W. WEDEMEYER, JUDGE

9